## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RALEIGH FLEX OWNER I, LLC, a Delaware limited liability company, )<br><br>Plaintiff, )<br><br>v. )<br><br>MARKETSMART INTERACTIVE, INC., a North Carolina corporation, and MARKETSMART ADVERTISING, INC., a North Carolina corporation, )<br><br>Defendants. ) | 1:09CV00699 |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion pursuant to Fed. R. Civ. P. 6 to Extend Discovery and Set New Scheduling Order Dates (Docket Entry 26) and Plaintiff's Motion for Leave to File First Amended Complaint (Docket Entry 27). For the reasons that follow the Court will permit Plaintiff to amend its Complaint and will extend certain case management deadlines.

### BACKGROUND

Plaintiff, an owner of commercial real estate, instituted this action by filing a Complaint in this Court (based on diversity jurisdiction) alleging that Defendants breached a lease agreement, violated the North Carolina Unfair and Deceptive Trade Practices Act, and committed common law fraud and misrepresentation. (Docket Entry 1.) According to the Complaint:

1) Plaintiff acquired the real property underlying this dispute ("the Perimeter Park Property") on March 27, 2007, along with an assignment of a related lease held by Defendant MarketSmart Interactive, Inc. (originally entered into by said defendant's corporate predecessor) (<u>id.</u> at 3-4);

2) in advance of its acquisition of the Perimeter Park Property, Plaintiff directed a document called an estoppel certificate to the existing tenants of said property, including Defendant MarketSmart Interactive, Inc., to obtain assurances of various things, including that the lease remained in force through 2014, that the tenant had not assigned the lease or allowed anyone else to occupy the subject property, and that the tenant was solvent (<u>id.</u> at 5-7);

3) on February 23, 2007, a corporate official with Defendant MarketSmart Advertising, Inc. signed the estoppel certificate on behalf of Defendant MarketSmart Interactive, Inc., despite the fact that Defendants knew that Defendant MarketSmart Interactive, Inc. was being dissolved (<u>id.</u> at 6); and

4) after a period of time in which Defendants' parent company, ThinkPartnership, Inc., and Defendant MarketSmart Advertising, Inc. each alternately made payments due to Plaintiff on the lease held by Defendant MarketSmart Interactive, Inc., from the same bank account (during which time Defendant MarketSmart Advertising, Inc.

occupied the subject property), Plaintiff no longer received the required lease payments (id. at 7-10).

After Defendants answered (Docket Entry 7), the Court (per United States Magistrate Judge Wallace W. Dixon) approved the parties' Joint Rule 26(f) Report (Docket Entry dated Jan. 12, 2010) with the following deadlines:

1) July 1, 2010, for seeking leave to add parties or to amend pleadings and for production of Plaintiff's expert report(s);

2) July 2, 2010, for general discovery;

3) August 1, 2010, for production of Defendants' expert report(s);

4) August 30, 2010, for expert discovery; and

5) October 15, 2010, for the filing of dispositive motions. (Docket Entry 12 at 2, 4.)[1] The Clerk later set the case for trial during the April 2011 Master Calendar Term. (Docket Entry 25.)

Upon approval of the Scheduling Order, Plaintiff promptly served Defendants with discovery requests and Defendants (with Plaintiff's consent) obtained an extension of their time to respond. (Docket Entries 15, 16.) Defendants thereafter sought a further extension of their response deadline because of an unexpected change in their legal representation. (Docket Entry 17 at 1-2.) Plaintiff consented to an extension through March 8,

---

[1] The schedule also stated: "mediation should occur subsequent to May 15, 2010 and only after some discovery has been completed." (Docket Entry 12 at 2.)

2010, but Defendants requested until March 22, 2010. (Id. at 3.)[2] In its response to Defendants' extension motion, Plaintiff noted that, "[w]ithout access to the documents requested . . ., depositions cannot be scheduled, further [document discovery] cannot be pursued, any motions regarding the sufficiency of Defendants' response to the [discovery requests] will be delayed, and the overall pretrial process will be impaired." (Docket Entry 18 at 2.)  The Court (per the undersigned United States Magistrate Judge) thereafter granted Defendants an extension until March 15, 2010.  (Docket Entry 19.)

Defendants acknowledge that Plaintiff served them with additional document requests in April 2010 and obtained documents from third-parties via subpoena before a mediation on May 3, 2010. (Docket Entry 35 at 3-4.)[3]  According to Defendants, the April 2010 requests "sought information relating to the issues [Plaintiff] now seeks to raise by way of its amended complaint . . . [and] [D]efendants objected to [those] requests . . . ."  (Id. at 3.) Defendants assert that Plaintiff's "first attempt to take depositions took the form of deposition notices served on June 23, 2010 . . ., but the parties agreed to postpone those depositions [from the noticed dates of July 1 and 2, 2010] (and certain

_____

[2] In support of their argument that the requested extension would not delay the case's progress, Defendants observed that "[n]o depositions have been noticed . . . ." (Docket Entry 17 at 3.)

[3] Neither side has addressed why the mediation occurred on May 3, 2010, rather than after May 15, 2010, as agreed in the Scheduling Order, and the Court does not find said matter material to the issues raised by the instant motions.

-4-

depositions to be taken by [Defendants]) to accommodate scheduling difficulties." (Id. at 4.)

On June 28, 2010, Plaintiff filed the instant motions seeking leave to amend its Complaint and an extension of certain deadlines from the Scheduling Order. (Docket Entries 26, 27.) Defendants responded in opposition (Docket Entries 34, 35) and Plaintiff filed replies (Docket Entries 36, 37). In addition, on July 2, 2010, Plaintiff moved for an order compelling Defendants to produce certain documents. (Docket Entry 29.) Defendants filed their own motion to compel discovery on July 6, 2010. (Docket Entry 32.)

Because it appeared the parties and/or counsel might have lost proper focus, the Court (per the undersigned Magistrate Judge) ordered both sides to re-examine their positions regarding all pending motions and then to confer with each other in an effort to reach common ground. (Docket Entry 38.) The parties subsequently advised the Court that they largely had resolved their dueling motions to compel, but that their disputes over amending the Complaint and Scheduling Order remained. (See Docket Entry 39.)

## DISCUSSION

### Motion for Leave to File First Amended Complaint

Plaintiff seeks leave "to file a First Amended Complaint naming ThinkPartnership, Inc., as a defendant and alleging a veil piercing claim because ThinkPartnership was the driving force behind a scheme to deprive [Plaintiff] of the benefits of a

commercial lease through the manipulation and disregard of the corporate identities of the present Defendants," (Docket Entry 28 at 5 (internal parenthetical and footnote omitted)).[4] "Defendants oppose [P]laintiff's motion to amend on two grounds: 1) that the addition of a 'piercing the corporate veil' claim at this late juncture would fundamentally alter the nature of the proceedings and, thus, unduly prejudice [D]efendants; and 2) that [P]laintiff's proposed amendment is futile as it cannot withstand a motion to dismiss." (Docket Entry 35 at 2.)

"The [C]ourt should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S. 178, 182 (1962). Reasons to deny leave to amend a complaint include "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party . . . ., [and] futility of amendment," id.

*Undue Delay, Bad Faith/Dilatory Motive, and/or Undue Prejudice*

Defendants complain that, with its proposed amendment, "Plaintiff seeks to fundamentally alter the nature of this case by adding a 'piercing the corporate veil' theory against [D]efendants'

---

[4] Page references to this document and Plaintiff's reply brief (Docket Entry 36) refer to the page numbers for said filings in their CM/ECF footers. According to Plaintiff, ThinkPartnership, Inc. has undergone two name changes since the events alleged in the Complaint. (Docket Entry 28 at 5 n.1.)

parent company in a motion filed a scant four days before the July 2, 2010, deadline agreed upon by the parties for the completion of general discovery." (Docket Entry 35 at 6.) Defendants' argument in this regard ignores the fact that the Scheduling Order to which they agreed permitted requests for such amendments up to the day before the planned close of general discovery. (See Docket Entry 12 at 4.) At the time of the establishment of the Scheduling Order, Defendants could have sought an earlier deadline for such proposed amendments,[5] after which Plaintiff would have had to meet the more demanding "good cause" standard in Federal Rule of Civil Procedure 16(b), rather than only the more "liberal" test of Rule 15(a), see Nourisan Rug Corp. v. Parvizan, 535 F.3d 295, 298-99 (4th Cir. 2008). Defendants failed to pursue that course.

Having chosen a Scheduling Order that permitted motions for leave to amend pleadings and to add parties right up to the close of general discovery, Defendants cannot now reasonably argue that, in this case, proposed amendments near that date are per se untimely so as to constitute "undue delay" and/or to cause "undue prejudice." That conclusion applies with particular force where, as here, Defendants: 1) agree that most, if not all, of the depositions in the case should occur after the Scheduling Order's deadline for general discovery; 2) obtained an extension of time to

---

[5] In fact, most proposed scheduling orders the undersigned Magistrate Judge reviews set the deadline for amendment of pleadings and addition of parties well before the date for the close of discovery.

respond to Plaintiff's discovery requests, notwithstanding Plaintiff's contemporaneous assertion that such delay undermined its ability to make timely litigation decisions; and 3) objected to Plaintiff's discovery requests addressing the subject-matter of the proposed amendment (when the timely provision of responsive documents might have allowed Plaintiff to pursue amendment sooner).

Further, Defendants have failed to explain how Plaintiff's proposed addition of their corporate parent as a defendant on a veil-piercing theory "fundamentally alters the nature of this case" (Docket Entry 35 at 6). The Court sees no obvious parallels between an amendment of the sort proposed in this case and the one at issue in the case on which Defendants principally rely, Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 598-600, 602-04 (4th Cir. 2010); moreover, Defendants make no attempt to justify their conclusory assertion that said case involved "circumstances analogous to this case." (Docket Entry 35 at 6.)

According to Defendants, in Equal Rights Ctr., the United States Court of Appeals for the Fourth Circuit "quoted at length from the district court's analysis of . . . the impact of the eleventh hour addition of a contribution claim on the course of discovery and the prejudice to the cross-claim defendant's ability to assess its position in the case prior to the expenditure of significant litigation expenses" and described the district court's "'analysis that the amendment – coming so belatedly – would change

the nature of the litigation and, would therefore, prejudice the cross-claim defendant,'" as "'<u>compelling</u>.'" (<u>Id.</u> at 7 (citing and quoting <u>Equal Rights Ctr.</u>, 602 F.3d at 603-04) (emphasis added).) In this case, by contrast, the Court has insufficient information with which to make any <u>analysis</u> of the impact Plaintiff's proposed amendment will have on discovery or on the cost to any entity of assessing (or re-assessing) its litigation position, let alone to make an analysis on those subjects that the Fourth Circuit might find <u>compelling</u>. The Court will not speculate about such matters.

Defendants also contend that "[t]he parties have conducted discovery and Defendants have formulated their litigation strategy based upon the allegations of the original pleadings. Whether [P]laintiff's motion to amend at this late stage is precipitated by <u>gamesmanship</u> or is merely a function of <u>undue delay</u>, the fact remains that such a claim, if asserted at all, should have been brought long ago." (Docket Entry 35 at 6 (emphasis added); <u>see also id.</u> at 8 ("[T]he parties have already defined their litigation positions, conducted discovery, and participated in a mediated settlement conference. The manner in which the case has been framed by the original pleadings has informed Defendants' strategy in regard to each aspect of these proceedings. The addition of [D]efendants' parent company at this late juncture would force [D]efendants to revisit their position in this case . . . .").)

Again, Defendants fail to offer any rationale for the Court to conclude that Plaintiff acted unreasonably or (more precisely) engaged in "undue delay" or "bad faith" by seeking to amend its Complaint within the time allotted by the Scheduling Order endorsed by all parties and adopted by the Court. Moreover, Defendants' position in this regard ignores their own admission that (based on Plaintiff's discovery requests) Defendants had notice that Plaintiff considered the involvement of Defendants' parent company a potential issue in the case months before Plaintiff filed the instant motion to amend its Complaint.[6] Given such notice, Defendants' claim that, in framing their litigation strategy, they heavily relied on the absence of their parent company as a named defendant rings somewhat hollow.[7]

Nor have Defendants pointed to any evidence to support their suggestion that Plaintiff may have engaged in "gamesmanship" by waiting to seek leave to amend until shortly before the deadline for such action under the Scheduling Order. In fact, Plaintiff's apparently open disclosure of its focus on the role of Defendants' parent company during discovery suggests anything but "gamesmanship" on Plaintiff's part. A plaintiff's decision to wait

---

[6] Moreover, it appears Defendants' corporate parent has been involved in this litigation. (Docket Entry 17 at 1-2 (seeking more time to respond to Plaintiff's discovery requests because of departure of corporate counsel for Defendants' parent company, who had been handling litigation for Defendants).)

[7] Defendants have cited no examples of how this alleged reliance affected their approach to the litigation. In particular, Defendants have not identified any discovery they conducted or how they might have handled such discovery differently if Plaintiff had named their corporate parent as a defendant earlier.

-10-

to name a corporation related to the originally-named corporate defendants until after the plaintiff attempts to conduct some discovery does not strike the Court as an inherently improper course of action; to the contrary, one might well construe such an approach as reflecting responsible litigation practice.

The only other consideration cited by Defendants in support of their claim that Plaintiff's motion for leave will cause them undue prejudice is that the proposed amendment would "potentially require extensive additional discovery from all parties, and ultimately prolong the resolution of this matter without <u>just cause</u>." (Docket Entry 35 at 8 (emphasis added).)  As an initial matter, as noted above, because Plaintiff sought leave to amend within the time allotted by the Scheduling Order, it need not show "good cause" for its motion (as Rule 16(b) would have required after the Scheduling Order deadline).  Instead, under Rule 15(a)'s "liberal" standard, the Court should grant the motion absent some disqualifying reason.

Further, assuming that the burden of conducting additional discovery might qualify as "undue prejudice" in some cases where the timing of the motion for leave falls within the limits contemplated by the applicable scheduling order, the Court finds no such "undue prejudice" in this case for several reasons.  First, the parties likely have sufficient time to complete any discovery necessitated by the addition of Defendants' parent company without any delay in the trial of this case (currently set for no earlier

than April 4, 2011).  Second, Defendants have admitted that both sides still need to take depositions and it appears that few, if any, depositions have occurred.  Accordingly, even without this amendment, Defendants have agreed to an extension of the discovery period (and, by implication, the dispositive motions deadline) and will not have to re-do a large number of depositions.

Third, Defendants have not shown that any extension of the discovery deadline required by Plaintiff's proposed amendment would cause a substantially greater delay in the conclusion of the discovery period and the potential resolution of the case by way of dispositive motion than will occur because of the other delays (that Defendants have acknowledged do warrant an extension of the time for discovery).[8]  Finally, Defendants have not identified what additional discovery will become necessary due to the proposed amendment.  The Court thus cannot reasonably assess the nature or degree of burden, if any, that will result.[9]

---

[8] Plaintiff mistakenly states that "no dispositive motion deadline has been set." (Docket Entry 36 at 2; accord id. at 6.)  By operation of this Court's Local Rules, the deadline for dispositive motions falls 30 days after all discovery ends.  See M.D.N.C. R. 56.1(b).  Further, the Scheduling Order proposed by the parties and adopted by the Court specifically addressed the dispositive motions deadline, extending it from the normal 30 days after the close of all discovery provided for by Local Rule to 45 days after the close of all discovery (i.e., October 15, 2010).  (Docket Entry 12 at 2.)  Plaintiff's counsel should take greater care in making representations to the Court; however, for the reasons set out above, the Court does not find any basis for concluding that the proposed amendment will cause a delay in the time for litigating dispositive motions sufficient to create undue prejudice within the meaning of Rule 15(a).

[9] Given the inherent inter-relationship between Defendants and their parent company, the Court does not find any facially obvious basis for concluding that Defendants and/or their parent company will incur any great expense or any other significant burden in conducting any discovery as a function of the inclusion of Defendants' parent as a formal party to the case.

In sum, the Court finds that Defendants' arguments regarding undue delay, bad faith or dilatory motive, and undue prejudice lack merit.

*Futility*

"An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." <u>Syngenta Crop Prod., Inc. v. Environmental Prot. Agency</u>, 222 F.R.D. 271, 278 (M.D.N.C. 2004). A plaintiff fails to state a claim when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[10]

According to Defendants, "[P]laintiff has not proffered factual allegations sufficient to support its 'piercing the corporate veil' theory." (Docket Entry 35 at 8.)   "In North Carolina, what has been commonly referred to as the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.'" Glenn v. Wagner, 313 N.C. 450, 454 (1985).[11]   Under that rule, "[a] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled.  In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded."   Id. (internal brackets and quotation marks omitted).

Prior to its decision in Glenn, the North Carolina Supreme Court had

> enumerated three elements which support an attack on
> separate corporate entity under the instrumentality rule:

---

[10] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).  Of course, in applying the Rule 12(b)(6) standard while reviewing a proposed amendment for futility, the question of "[w]hether [a litigant's] allegations . . . are ultimately provable or accurate is not an issue before the Court," Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1427592, at *11 n.10 (M.D.N.C. Apr. 8, 2010) (unpublished) (internal quotation marks omitted).

[11] Plaintiff and Defendants agree that North Carolina law controls this issue and look to Glenn.  (See Docket Entry 28 at 12; Docket Entry 35 at 9.)

> (1) Control, not mere majority or complete
> stock control, but complete domination, not
> only of finances, but of policy and business
> practice in respect to the transaction
> attacked so that the corporate entity as to
> this transaction had at the time no separate
> mind, will or existence of its own; and
>
> (2) Such control must have been used by the
> defendant to commit fraud or wrong, to
> perpetrate the violation of a statutory or
> other positive legal duty, or a dishonest and
> unjust act in contravention of plaintiff's
> legal rights; and
>
> (3) The aforesaid control and breach of duty
> must proximately cause the injury or unjust
> loss complained of.

Id. at 454-55 (quoting B-W Acceptance Corp. v. Spencer, 268 N.C. 1, 9 (1966)); see also id. at 455 (identifying as previously-recognized, relevant "[f]actors . . . in piercing the corporate veil": "1. Inadequate capitalization ('thin incorporation')[;] 2. Non-compliance with corporate formalities[;] 3. Complete domination and control of the corporation so that it has no independent identity[; and] 4. Excessive fragmentation of a single enterprise into separate corporations." (internal citations omitted)).

In Glenn, the North Carolina Supreme Court clarified "that domination sufficient to pierce the corporate veil need not be limited to the particular transaction attacked[,] . . . [but noted] that it will be a rare case in which the corporate veil will be pierced when the domination does not extend to the transaction attacked." Id. at 456. Accordingly, under North Carolina law, even in the absence of allegations that Corporation A "formulated

-15-

or had actual knowledge of the policy underlying the transaction attacked" in a complaint, the plaintiff can pierce the corporate veil where the allegations "support a finding that [Corporation B that committed the alleged tort] had 'no separate role of its own' and that [Corporation A] exercised 'actual control' over [Corporation B], 'operating the latter as a mere instrumentality or tool.'" Id. at 457; see also id. ("Where an affiliated corporation is without a separate and distinct corporate identity and is operated as a mere shell, created to perform a function for an affiliated corporation or its common shareholders, we do not believe an analysis of domination need be narrowly limited to control over the particular transaction attacked . . . .").

Plaintiff's proposed First Amended Complaint contains the following allegations of "factual matter" (as distinguished from "legal conclusions" and/or "conclusory statements") to show that ThinkPartnership, Inc. exercised the level of control over Defendants[12] necessary to support Plaintiff's veil-piercing claim:

_____

[12] In opposing Plaintiff's instant motion to amend on grounds of futility, Defendants appear to make two arguments, the second of which attacks the sufficiency of Plaintiff's allegations that ThinkPartnership, Inc. exercised the requisite dominion over Defendants. Defendants' first argument, in contrast, asserts that "the factual allegations of the Amendment would not establish inequitable conduct toward the plaintiff, and they fall far short of creating an inference of any 'scheme' on the part of ThinkPartnership to manipulate its subsidiaries against the plaintiff's interests." (Docket Entry 35 at 10.) In this regard, Defendants cite the fact that "[P]laintiff has not alleged that the estoppel certificate was inaccurate in any respect at the time it was signed." (Id.) As to this argument, Defendants thus challenge the adequacy of Plaintiff's underlying claim of fraud and imply that, to pierce the corporate veil, Plaintiff must show ThinkPartnership, Inc.'s direct role in perpetrating the fraud. In the Court's view, Glenn forecloses the latter position and the former tactic cannot be pursued in the context of the instant dispute over Plaintiff's motion to amend (but rather would require separate briefing in connection with a motion for judgment on the pleadings or similar vehicle designed to deal with the

40. After [Plaintiff] closed on the purchase of the Perimeter Park Property and beginning on June 1, 2007, ThinkPartnership, Inc. began delivering monthly rental payments to [Plaintiff] in the amount of $28,474.51 on behalf of [Defendant MarketSmart] Advertising[, Inc. ("Advertising")] (*See* checks attached at Exhibit F.).

41. In or around November of 2006 (and more than likely long prior to that time), ThinkPartnership, Inc., was proceeding with its plan to eradicate [Defendant MarketSmart] Interactive[, Inc. ("Interactive")] and shifted all of the business opportunities of Interactive to Advertising.
. . . .

46. Starting November 15, 2007, [Advertising] began delivering rental payments under the Lease to [Plaintiff] utilizing the same Wachovia Bank, N.A. account utilized by ThinkPartnership, Inc. (*See* checks attached at Exhibit G.).
. . . .

96. ThinkPartnership, Inc.'s, complete control and dominance over Interactive and Advertising is evidenced in part by the stream of rental payments that it delivered to [Plaintiff] for the occupancy of the Perimeter Park Property under the Lease.

97. ThinkPartnership, Inc., inadequately capitalized Advertising and Interactive as evidenced by ThinkPartnership, Inc.'s delivery of rental payment under the Lease to [Plaintiff] for the use of the Perimeter Park Property.

98. The sole shareholder of [Interactive] in 2007 was ThinkPartnership, Inc.

---

sufficiency of Plaintiff's underlying allegations of fraud – a motion Defendants have declined to file to date, see generally Johnson v. Oroweat Foods, 785 F.2d 503, 510 (4th Cir. 1986) (ruling that courts should reserve denial of amendment "on the ground of futility [to instances] when the proposed amendment is clearly insufficient or frivolous on its face")). Accordingly, the Court will focus on Defendants' second ground for attacking Plaintiff's veil-piercing claim as futile, i.e., that the allegations in the proposed First Amended Complaint fail to establish sufficient domination of Defendants by ThinkPartnership, Inc. (See Docket Entry 35 at 10 ("[P]laintiff has not alleged facts tending to establish that the alleged transfers from [Defendant MarketSmart Advertising, Inc.] to ThinkPartnership were inappropriate or inconsistent with the 'majority or complete stock control' which the North Carolina Supreme Court has expressly stated does not support a 'piercing the corporate veil' claim.").)

99. The sole shareholder of [Advertising] in 2007 was ThinkPartnership, Inc.

. . . .

102. ThinkPartnership, Inc.'s continuing domination and control over the assets, business and bank accounts of Advertising and Interactive is reflected in the banking records that have been produced to date in this litigation showing transfers of funds for the benefit of Interactive from the Advertising bank account to the account of ThinkPartnership, Inc., exceeding many millions of dollars.

(Docket Entry 27-3 at 7, 13-14 (emphasis added.)

The Court concludes that the foregoing allegations, particularly that ThinkPartnership, Inc. "shifted all of the business opportunities of Interactive to Advertising" (id. at 7), that ThinkPartnership, Inc. made direct lease payments on behalf of Defendants, and that ThinkPartnership, Inc. caused the transfer of funds intended for use in meeting Defendant MarketSmart Interactive, Inc.'s obligations from an account of Defendant MarketSmart Advertising, Inc. to an account of ThinkPartnership, Inc., suffice to state a veil-piercing claim under North Carolina law. Plaintiff's allegations in this regard go beyond the prohibited reliance on the mere fact of complete ownership; they indicate control over not just finances, but also business practice, and (to the extent they address finances) suggest intentional undercapitalization in a manner that had a direct connection to the harm allegedly suffered by Plaintiff.

Moreover, in its reply brief, Plaintiff outlined additional factual matters uncovered in discovery conducted after the filing

of the instant motion to amend that further buttress the proposed veil-piercing claim against ThinkPartnership, Inc. (Docket Entry 36 at 9.) Specifically, Plaintiff identified an evidentiary basis to allege that (during the relevant time period):

1) "ThinkPartnership forced [Defendant MarketSmart Advertising, Inc.] to move from its old place of business to the leasehold premises against the will of [Defendant MarketSmart Advertising, Inc.'s] management" (<u>id.</u>);

2) "ThinkPartnership directed [Defendant MarketSmart Advertising, Inc.] to appoint a president for the company" (<u>id.</u>);

3) "ThinkPartnership made other personnel decisions for [Defendants]" (<u>id.</u>);

4) "ThinkPartnership directed [Defendant MarketSmart Advertising, Inc.'s] management to oversee [Defendant MarketSmart Interactive, Inc.'s] operations" (<u>id.</u>); and

5) "ThinkPartnership took control of [Defendant MarketSmart Advertising, Inc.'s] human resources and accounting functions and ran them from its Florida headquarters" (<u>id.</u>).

Under these circumstances, the Court rejects Defendants' futility argument and concludes that Plaintiff should be allowed to amend its Complaint to name ThinkPartnership, Inc. as a defendant under a veil-piercing theory. The Court will permit Plaintiff to file an amended complaint substantially similar to its proposed First Amended Complaint (Docket Entry 27-3), as modified to include

the additional, above-quoted allegations from Plaintiff's reply brief (Docket Entry 36 at 9).[13]

### Motion pursuant to Fed. R. Civ. P. 6 to Extend Discovery and Set New Scheduling Order Dates

Plaintiff seeks an extension of the general and expert discovery deadlines (including the dates for exchange of expert reports). (Docket Entry 26 at 1.) According to Plaintiff, it needs more time to conduct discovery because it deferred some discovery (including specifically depositions) until after an attempt at mediation, because Defendants failed to provide complete responses to Plaintiff's document requests (necessitating the filing of a motion to compel), and because of Plaintiff's above-discussed motion to amend. (Id. at 1-2.) Defendants agree that additional time is needed to conduct depositions, but "request that the Court grant [P]laintiff's motion [for an extension of Scheduling Order deadlines] only to the extent of allowing [certain specified] depositions to be taken after [July 2, 2010, and] . . . set an appropriate date, such as August 31, 2010, by which those depositions shall be completed." (Docket Entry 34 at 4-5.) In addition, as noted above in the Background section, after they submitted the foregoing filings, the parties reached an agreement

---

[13] For reasons stated in <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr.19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to Plaintiff's instant motion seeking leave to amend its Complaint.

to exchange additional discovery (in lieu of further litigation over their respective motions to compel). (See Docket Entry 39.)

Given the parties' agreement that additional time is needed to complete depositions (as well as their consensus as to the propriety of exchanging additional document discovery in connection with their respective motions to compel) and given the record evidence (outlined in the Background section above) indicating that Plaintiff pursued discovery with reasonable diligence (as required to establish the requisite "good cause" under Federal Rule of Civil Procedure 16(b) and this Court's Local Rule 26.1(d), see generally Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1418312, at *2-3 (M.D.N.C. Apr. 2, 2010) (unpublished) (discussing standard for modification of scheduling order)), the Court finds an extension of the time for general discovery to October 1, 2010, appropriate.[14]  That extension warrants a proportional adjustment of the Scheduling Order's deadlines applicable to expert discovery.

In light of ThinkPartnership, Inc.'s prior knowledge of/ involvement in this case and the inter-relationship between ThinkPartnership, Inc. and Defendants, the Court anticipates that the schedule as amended would afford sufficient opportunity for ThinkPartnership, Inc. to carry out its necessary pretrial

---

[14] The Court deems an extension of time for discovery restricted only to depositions imprudent in this case.  For example, information uncovered in depositions may warrant further exploration via written discovery devices.  In addition, the parties ultimately may determine that written discovery devices afford a more efficient means of discovery than depositions currently planned.

-21-

activities as a formal party. By prior Order, the Court directed that, "within 30 days of the Court's entry of an order on Plaintiff's motion to amend its Complaint (Docket Entry 27), the parties shall file a joint status report regarding the execution of their agreement regarding their motions to compel." (Docket Entry 40 at 4.) In that report, the parties also shall address the status of ThinkPartnership, Inc.'s integration into the case.

<u>CONCLUSION</u>

The Court does not find that Plaintiff's proposed amendment of its Complaint should be denied for "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party . . ., [or] futility of amendment," <u>Foman</u>, 371 U.S. at 182. In addition, the Court concludes that good cause exists to extend case management deadlines in this case.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint (Docket Entry 27) is **GRANTED**. On or before August 13, 2010, Plaintiff shall file an amended complaint substantially similar to its proposed First Amended Complaint (Docket Entry 27-3), as modified to include the additional allegations from Plaintiff's reply brief (Docket Entry 36 at 9) quoted in this Order. Plaintiff thereafter shall make prompt service on ThinkPartnership, Inc. under Fed. R. Civ. P. 4.

-22-

**IT IS FURTHER ORDERED** that Plaintiff's Motion pursuant to Fed. R. Civ. P. 6 to Extend Discovery and Set New Scheduling Order Dates (Docket Entry 26) is **GRANTED**.  The Scheduling Order is **MODIFIED** as follows:  1) the completion of general discovery and the production of Plaintiff's expert report(s) shall occur on or before October 1, 2010; 2) the production of Defendants' expert report(s) shall occur on or before November 1, 2010; 3) the completion of expert discovery and any supplementation under Fed. R. Civ. P. 26(e) shall occur on or before December 1, 2010; and 4) the filing of dispositive motions shall occur on or before December 31, 2010.

**IT IS FURTHER ORDERED** that, on or before September 10, 2010, as part of the joint status report previously ordered by this Court (<u>see</u> Docket Entry 40 at 4), the parties shall address the subject of ThinkPartnership, Inc.'s integration into the case as a defendant, including as it relates to the case management deadlines established by this Order.

     /s/ L. Patrick Auld
       **L. Patrick Auld**
**United States Magistrate Judge**

August 11, 2010