# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RALEIGH FLEX OWNER I, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:09CV699 |
| MARKETSMART INTERACTIVE, INC., a North Carolina corporation, MARKETSMART ADVERTISING, INC., a North Carolina corporation, and INUVO, INC., a Nevada corporation, f/k/a KOWABUNGA!, INC., a Nevada corporation, f/k/a THINKPARTNERSHIP, INC., a Nevada corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Plaintiff's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(a) as to the First, Second, and Fifth Causes of Action of Plaintiff's First Amended Complaint (Docket Entry 68), Defendants' Motion for Summary Judgment (Docket Entry 69), and Defendants' Motion for Leave to File Amended Answers to First Amended Complaint (Docket Entry 78). For the reasons that follow, the undersigned Magistrate Judge recommends that the Court:

1) grant summary judgment to Plaintiff on its First Cause of Action, its breach of contract claim against Defendant MarketSmart

Interactive, Inc. ("MSI"), but otherwise deny Plaintiff's motion seeking partial summary judgment;

2) grant summary judgment in Defendants' favor on Plaintiff's claims for breach of contract against Defendant MarketSmart Advertising, Inc. ("MSA") and for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") and common law fraud and misrepresentation against Defendants MSI and MSA, but otherwise deny Defendants' summary judgment motion; and

3) deny Defendants' request to amend their Answer.[1]

<u>BACKGROUND</u>

Plaintiff instituted this action by filing a Complaint in this Court (based on diversity jurisdiction) alleging that Defendants MSI and MSA each breached a lease agreement (First and Second Causes of Action), violated the North Carolina Unfair and Deceptive Trade Practices Act (Third Cause of Action), and committed common law fraud and misrepresentation (Fourth Cause of Action). (Docket Entry 1.) According to the Complaint:

1) on March 27, 2007, Plaintiff (a Delaware limited liability company based in Michigan) acquired some commercial real estate in North Carolina ("the Perimeter Park Property"), along with an assignment of a 10-year lease ("the Lease") (originally entered

_____

[1] For reasons stated in <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge generally utilizes an order, rather than a recommendation, when confronted with a motion to amend a pleading; however, for reasons discussed below, <u>infra</u>, pp. 10-16, Defendants' request for leave to amend their Answer and certain of the parties' summary judgment arguments converge in a fashion that warrants utilization of a recommendation for Defendants' motion seeking an amendment.

-2-

into by WebSourced, Inc. – Defendant MSI's corporate predecessor – and Duke Realty Limited Partnership), under which Defendant MSI (a North Carolina corporation) occupied a portion of the Perimeter Park Property ("the Premises") (id. at 2-4);[2]

2) in advance of its acquisition of the Perimeter Park Property, Plaintiff directed an Estoppel Certificate to Defendant MSI requesting confirmation, inter alia, that the Lease ran through 2014, that Defendant MSI had not assigned the Lease or allowed anyone else to occupy the Premises, and that Defendant MSI remained solvent (id. at 5-7);

3) on February 23, 2007, an officer of Defendant MSA (a North Carolina corporation) signed the Estoppel Certificate directed to Defendant MSI, despite the fact that Defendant MSI and Defendant MSA knew that Defendant MSI was being dissolved (id. at 3, 6);

4) for more than two years after Plaintiff acquired the Perimeter Park Property and the Lease (i.e., from March 2007 to August 2009), Defendant MSA or the parent company of Defendants MSI and MSA (i.e., Inuvo, Inc.)[3] made payments due to Plaintiff under the Lease (during which time Defendant MSA occupied the Premises) (id. at 7-10); and

---

[2] To avoid confusion that might arise due to variations in the pagination conventions used in the parties' filings with the Court, this Memorandum Opinion cites said filings by reference to the page numbers in their CM/ECF footers.

[3] According to Plaintiff, over the course of these events, Inuvo's corporate name underwent various iterations. (Docket Entry 47 at 3.)

5) in August 2009, Plaintiff stopped receiving payments set forth in the Lease and Defendant MSA abandoned the Premises (id.).

The Court (per the undersigned Magistrate Judge) subsequently granted Plaintiff's request to amend its Complaint to add Inuvo as a defendant via a corporate veil-piercing theory. (See Docket Entry 45 at 5-20, 22.) As a result, Plaintiff filed its First Amended Complaint, which – in addition to restating the four original claims – set forth a Fifth Cause of Action to allow Plaintiff to pierce the corporate veils of Defendants MSI and MSA in order to impose liability for the alleged contract and tort claims on Defendant Inuvo, the corporate parent of Defendants MSI and MSA. (Docket Entry 47 at 1-3, 12-16.) Defendants then answered. (Docket Entry 52.) After discovery, the parties filed their instant cross motions for summary judgment (partial in Plaintiff's case) (Docket Entries 68 and 69) and Defendants moved for leave to amend their Answer (Docket Entry 78).[4]

## DISCUSSION

### Underlying Legal Standards

"A federal court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of

_____

[4] As set out in the introductory portion of the Discussion section, infra, pp. 6-7, at this stage, the Court must view the record evidence in the light most favorable to the non-movant. That exercise takes on an additional level of complexity where, as here, the parties have cross-summary judgment motions as to some claims. Accordingly, this Memorandum Opinion will dispense with a further summary of the facts at this juncture and, instead, will identify the relevant evidence in discussing the various issues raised by the parties' motions.

that state would rule." <u>Brendle v. General Tire & Rubber Co.</u>, 505
F.2d 243, 245 (4th Cir. 1974). In making that assessment:

> <u>[A] federal court must look first and foremost to the law
> of the state's highest court</u>, giving appropriate effect
> to all its implications. <u>A state's highest court need
> not have previously decided a case with identical facts
> for state law to be clear</u>. It is enough that a fair
> reading of a decision by a state's highest court directs
> one to a particular conclusion. <u>Only when this inquiry
> proves unenlightening . . . should a federal court seek
> guidance from an intermediate state court.</u>

> When seeking such guidance [federal courts] defer to a
> decision of the state's intermediate appellate court to
> a lesser degree than [they] do to a decision of the
> state's highest court. Nevertheless, [federal courts] do
> defer. Indeed, the Supreme Court has specifically
> directed:

>> [w]here an intermediate appellate state court
>> rests its <u>considered judgment</u> upon the rule of
>> law which it announces, that is a datum for
>> ascertaining state law which is not to be
>> disregarded by a federal court unless it is
>> convinced by other persuasive data that the
>> highest court of the state would decide
>> otherwise.

> Thus, a federal court must "present" persuasive data when
> it chooses to ignore a decision of a state intermediate
> appellate court that is directly on point. What a
> federal court, sitting in diversity, cannot do is simply
> substitute its judgment for that of the state
> [intermediate appellate] court.

>          . . . .

> <u>Generally, only if the decision of a state's intermediate
> court cannot be reconciled with state statutes, or
> decisions of the state's highest court, or both, may a
> federal court sitting in diversity refuse to follow it</u>.
> When an intermediate state court decision is at odds with
> an existing statutory scheme or one amended after
> issuance of the intermediate court's decision, a federal
> court may justifiably surmise that the statute presents
> persuasive data that the state's highest court would not

follow the intermediate court's decision. Similarly, the holdings of a state's highest court that undermine the rationale of an intermediate appellate court decision may constitute such persuasive data; this is so even if a state supreme court holding antedates the inferior court's opinion. However, a federal court must closely scrutinize the assertedly conflicting statutory schemes or supreme court decisions to satisfy itself that they truly do undermine an intermediate appellate court decision directly on point.

A federal court can depart from an intermediate [state appellate] court's <u>fully reasoned</u> holding as to state law only if "convinced" that the state's highest court would not follow that holding. Accordingly, <u>a federal court cannot refuse to follow an intermediate appellate court's decision simply because it believes the intermediate court's decision was wrong, bad policy, or contrary to the majority rule in other jurisdictions</u>.

<u>Assicurazioni Generali, S.p.A. v. Neil</u>, 160 F.3d 997, 1002-03 (4th Cir. 1998) (quoting <u>West v. American Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940)) (internal citations omitted) (emphasis added).

Although "the substantive elements of [a plaintiff's claims] are all questions to be determined by state law in a diversity action . . ., whether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law, is controlled by federal rules." <u>Fitzgerald v. Manning</u>, 679 F.2d 341, 346 (4th Cir. 1982). Under such federal rules, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "may not make credibility determinations or weigh the evidence." <u>Reeves v.</u>

<u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). Instead, it "must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor." <u>Matvia v. Bald Head Island Mgt., Inc.</u>, 259 F.3d 261, 266 (4th Cir. 2001). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006).

<u>Breach of Contract against Defendant MSI</u>

Both sides have moved for summary judgment on Plaintiff's claim for breach of contract against Defendant MSI. (Docket Entry 68 at 4; Docket Entry 69 at 1-2.) In support of their respective positions, Plaintiff and Defendants agree that North Carolina law governs the resolution of this issue and that, under such law, a breach of contract claim requires proof of two elements: 1) a valid contract; and 2) a breach thereof. (Docket Entry 68 at 16-17 (citing <u>Poor v. Hill</u>, 138 N.C. App. 19, 27, 530 S.E.2d 838, 843 (2000)); Docket Entry 70 at 10 (citing <u>Jackson v. Carolina Hardwood Co., Inc.</u>, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995))); <u>accord</u> <u>Tillis v. Calvine Cotton Mills, Inc.</u>, 251 N.C. 359, 363, 111 S.E.2d 606, 610 (1959). Defendants have contested the sufficiency of Plaintiff's evidence only as to the first such element, i.e.,

the existence of an enforceable contract. (<u>See</u> Docket Entry 70 at 10-12; Docket Entry 73 at 9-12.)

More specifically, Defendants have asserted that:

1) under North Carolina's Statute of Frauds, N.C. Gen. Stat. § 22-2, as construed in <u>Herring v. Volume Merchandise, Inc.</u>, 249 N.C. 221, 225-27, 106 S.E.2d 197, 200-01 (1958), a lease greater than three years in length and any assignment of such a lease each requires the existence of signed writings attesting to the agreement (Docket Entry 70 at 10; Docket Entry 73 at 9); and

2) Plaintiff failed to produce competent evidence of a signed writing reflecting that it received a valid assignment of the Lease (Docket Entry 70 at 11; Docket Entry 73 at 9-10).

As to the latter point, Defendants focused upon the fact that:

1) the document on which Plaintiff relied to establish its interest in the Lease reflected an assignment from an entity called FirstCal Industrial 2 Acquisition, LLC ("FirstCal")(<u>id.</u>); and

2) the record contained no documentation that FirstCal received a written assignment of the Lease from Duke Realty (which FirstCal then validly could have conveyed to Plaintiff) (<u>id.</u>).

In response, Plaintiff did not challenge the applicability of North Carolina's Statute of Frauds to the Lease (and any assignment thereof), but instead offered these two arguments:

1) Defendants judicially conceded that Defendant MSI held an interest in the Lease enforceable under the Statute of Frauds by admitting in their Answer that, "[u]nder Article 3 of the Lease, [Defendant MSI] was required to pay [Plaintiff] the base rent as well as the additional rent on the first day of each calendar month during the lease term through February 28, 2014" (Docket Entry 75 at 13 (citing Docket Entry 47 at 8 (¶ 55); Docket Entry 52 at 6 (¶ 55)); Docket Entry 76 at 3 (same)); and

2) based on a document attached to Plaintiff's summary judgment response brief (Docket Entry 75-3 at 10-30), FirstCal did receive a written assignment of the Lease from Duke Realty (Docket Entry 75 at 14; Docket Entry 76 at 3 & n.2).

Defendants countered those contentions as follows:

1) Defendants' response to Paragraph 55 did not constitute an admission that a contract existed between Plaintiff and Defendant MSI, but rather only an admission about the terms of the Lease (as entered by WebSourced and Duke Realty), in light of Defendants' denial (by claimed lack of knowledge) in answering an earlier paragraph of the First Amended Complaint (Docket Entry 77 at 4 (citing Docket Entry 47 at 4 (¶ 22 (alleging that, "[i]n conjunction with [Plaintiff's] purchase of the Perimeter Park Property, [Plaintiff] received an assignment of the [Lease formed] between Duke Realty and WebSourced")) and Docket Entry 52 at 3 (¶ 22 (answering that "Defendants deny knowledge or information

sufficient to form a belief as to the truth of the allegations set forth in this paragraph of the First Amended Complaint")));

2) Plaintiff's failure to authenticate the assignment from Duke Realty to FirstCal and to produce said document during discovery made said document incompetent to sustain Plaintiff's burden at the summary judgment stage (Docket Entry 77 at 2-3).

In addition, regarding the first of these points, Defendants alternatively requested that the Court grant their motion seeking leave "to amend their answers to [Paragraph 55 of the First Amended Complaint] to state specifically that [Defendants] lack sufficient information to determine whether the [Lease] was properly assigned to [Plaintiff]." (Id. at 5 n.2.) Finally, in opposing Plaintiff's motion seeking summary judgment on its breach of contract claims against Defendants MSI and MSA and its veil-piercing claim as to Defendant Inuvo, Defendants argued (without differentiating between those three matters) that "the evidence is sufficient to raise a genuine issue of material fact regarding the defendants' affirmative defenses of waiver and estoppel." (Docket Entry 73 at 17.) The discussion that follows separately addresses the availability of summary judgment for either side as to Plaintiff's breach of contract claim against Defendant MSI in light of:

1) Defendants' Answer to Paragraphs 22 and 55 of the First Amended Complaint and Motion for Leave to File Amended Answers;

2) the documentation submitted by Plaintiff showing the assignment of the Lease from Duke Realty to FirstCal; and

3) Defendants' affirmative defenses of estoppel and waiver.

*Defendants' Answer to Paragraphs 22 and 55*
*of the First Amended Complaint and Their*
*Motion for Leave to File Amended Answers*

As noted above, in answering Paragraph 55 of the First Amended Complaint, Defendants admitted that, "[u]nder Article 3 of the Lease, [Defendant MSI] was required to pay [Plaintiff] the base rent as well as the additional rent on the first day of each calendar month during the lease term through February 28, 2014." (Docket Entry 47 at 8 (¶ 55); Docket Entry 52 at 6 (¶ 55).) However, in a different part of that same document, Defendants denied knowledge that, "[i]n conjunction with [Plaintiff's] purchase of the Perimeter Park Property, [Plaintiff] received an assignment of the [Lease originally entered] between Duke Realty and WebSourced . . . ." (Docket Entry 47 at 4 (¶ 22); Docket Entry 52 at 3 (¶ 22).) Plaintiff contends that Defendants' admission in Paragraph 55 conclusively establishes the "valid contract" element of its breach of contract claim against Defendant MSI (and thus that the Court should enter summary judgment in its favor). (Docket Entry 75 at 13; Docket Entry 76 at 3.) Conversely, Defendants contend that the Court should construe their admission as to Paragraph 55 in light of their denial as to Paragraph 22 or,

in the alternative, that the Court should permit them to amend their Answer to clarify their position. (Docket Entry 77 at 4.)

"It is well-established that . . . admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." Bright v. QSP, Inc., 20 F.3d 1300, 1305 (4th Cir. 1994) (internal quotation marks omitted); see also Cananwill, Inc. v. EMAR Grp., Inc., 250 B.R. 533, 543-44 (M.D.N.C. 1999) (Beaty, J.) ("The doctrine of judicial admission is based on the view that a party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader. . . . [A] court may apply the doctrine of judicial admission when a party pleads the factual existence or accuracy of terms of a contract in dispute."). Indeed, such "[a] judicial admission is usually treated as absolutely binding . . . ." New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963).

However, the United States Court of Appeals for the Fourth Circuit has made it clear that "a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." Id. (emphasis added); see also Coral v. Gonse, 330 F.2d 997, 998 n.1 (4th Cir. 1964) ("Of course, even a judicial admission does not always foreclose a different position. If the District Court [is]

convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief, it may, in its discretion, relieve the party of [the] otherwise binding consequence [of a judicial admission].”).  In this regard, the Court’s inquiry as to summary judgment intersects with Defendants’ request to amend their Answer (Docket Entry 78).

The undersigned Magistrate Judge reads Paragraphs 22 and 55 of Defendants’ Answer as irreconcilable.  The plain language of Plaintiff’s allegation in Paragraph 55 precludes Defendants’ position that they only admitted what payment terms the Lease created, not whether Plaintiff had a right to payment from Defendant MSI under such terms.  (See Docket Entry 47 at 8 (¶ 55) (“Under Article 3 of the Lease, [Defendant MSI] was required to pay [Plaintiff] the base rent as well as the additional rent on the first day of each calendar month during the lease term through February 28, 2014.” (emphasis added).)  On the other hand, the conflict between Defendants’ judicial admission that a contract existed between Plaintiff and Defendant MSI as alleged in Paragraph 55 and their denial of that same fact as alleged in Paragraph 22 would support the view that Defendants’ admission in connection with Paragraph 55 constituted a “mistake” within the meaning of the Fourth Circuit’s holdings in New Amsterdam Casualty and Coral.[5]  As

---

[5] Arguably, Paragraph 22, not Paragraph 55, represents the “mistake.”  In this regard, the undersigned Magistrate Judge notes that, although Defendants’ Answer asserted that “Plaintiff’s claims against [Defendant MSA] are barred by the statute of frauds, N.C.G.S. Section 22-2, or such similar statute as may be

the language of those decisions indicates, however, Defendants must do more than simply show that they made a "mistake" in their Answer; specifically, Defendants also must establish that their admission (via Paragraph 55 of their Answer) that Plaintiff had a right to payment from Defendant MSI under the Lease was "untrue." Coral, 330 F.2d at 998 n.1; New Amsterdam Casualty, 323 F.2d at 24.

Defendants have not attempted to make any such showing; instead (in seeking to amend their Answer), they merely have asserted a lack of knowledge as to the existence of a contract between Plaintiff and Defendant MSI. The Court thus should not relieve Defendants of the effect of their judicial admission in Paragraph 55 of their Answer and, as a result, the Court:

1) should deny Defendants' Motion for Leave to File Amended Answers to First Amended Complaint (Docket Entry 78);

2) should deny the portion of Defendants' Motion for Summary Judgment (Docket Entry 69) that pertains to Plaintiff's claim for breach of contract against Defendant MSI; and

3) should grant the portion of Plaintiff's Motion for Partial Summary Judgment (Docket Entry 68) that pertains to Plaintiff's claim for breach of contract against Defendant MSI.

_____

found to apply" (Docket Entry 52 at 9), it interposed no such affirmative defense by Defendant MSI (see id. at 1-10). "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of frauds . . . ." Fed. R. Civ. P. 8(c)(1). Defendants' failure to identify any statute of frauds defense to Plaintiff's breach of contract claim against Defendant MSI supports the view that Defendants intended to admit (via Paragraph 55 of their Answer) that Plaintiff had a right to payment from Defendant MSI under the Lease and that Defendants "mistakenly" failed to make a consistent admission as to Paragraph 22 of the First Amended Complaint.

Moreover, even if the Court permitted Defendants to amend their Answer, that relief would effectively block but one avenue for Plaintiff to secure summary judgment on its claim that Defendant MSI breached the Lease (and would not create grounds on which Defendants could secure summary judgment on said claim):

> Superseding a pleading by amendment affects the weight, not the competency, of statements made in the original:
>
>> <u>When a pleading is amended . . . the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made . . . and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.</u>
>
> Here, the pleading which the briefs supported was superseded by the Amended and Restated Complaint. As such, the prior factual assertions cannot constitute a conclusive judicial admission. The statements, however, are not rendered inadmissible, and may be considered by this Court.

<u>Cananwill</u>, 250 B.R. at 545 (quoting <u>Kungliq Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.</u>, 32 F.2d 195, 198 (2d Cir. 1929) (internal ellipses in original) (emphasis added)); <u>accord</u> <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 144-45 (1st Cir. 2003) ("[S]tatements made in a superseded complaint . . . may be party admissions, usable as such despite subsequent amendment of the complaint."); <u>Huey v. Honeywell, Inc.</u>, 82 F.3d 327, 333 (9th Cir. 1996) ("[The defendant] admitted in its initial answers to [the plaintiff's] First and Second Amended Complaints that [the plaintiff] was hired as a just cause employee. Despite the fact that [the defendant] later

-15-

amended its answers to deny this allegation, [the defendant's] admissions are still admissible evidence, though not conclusive, like any other extrajudicial admission made by a party or its agent."); Kiepfer v. Beller, 944 F.2d 1213, 1219 (5th Cir. 1991) (holding that defendant's admission in answer as to which court later allowed amendment "on the grounds of mistake" constituted properly admitted evidence on which jury could base its verdict in plaintiff's favor); Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co., 828 F.2d 1245, 1249 n.3 (8th Cir. 1987) ("A pleading abandoned or superseded through amendment . . . may be introduced into evidence as the admission of a party.").

In other words, even if the Court allowed Defendants to amend their Answer to remove their admission as to Paragraph 55, their original response conceding that Plaintiff had a right to payment from Defendant MSI under the Lease would remain record evidence (although it now would admit contradiction by other evidence). As noted above, however, Defendants have come forward with no contradictory evidence on this subject and, in the absence of any evidentiary conflict, Plaintiff still would have a right to summary judgment on its breach of contract claim against Defendant MSI (and, conversely, Defendants' cross-summary judgment motion would fail). See Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) ("The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his

pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'" (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986))); <u>Francis</u>, 452 F.3d at 308 ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law."). Because that result would render Defendants' proposed amendment of their Answer ineffectual, the Court should deny their request for leave to amend on grounds of futility. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (identifying "futility of amendment" as basis to deny motion for leave to amend pleading).

*Documentation Submitted by Plaintiff Regarding the Assignment of the Lease from Duke Realty to FirstCal*

For the reasons discussed above, Defendants' admission in Paragraph 55 of their Answer (even if now amended as Defendants propose) constitutes competent, uncontradicted evidence that Plaintiff had a valid claim to payment from Defendant MSI under the Lease. As a result, the Court need not address the competency of the document purporting to show an assignment of the Lease from Duke Realty to FirstCal, which Plaintiff attached to its summary judgment response brief. To the extent the Court nonetheless chooses to confront this question, it should conclude that:

1) Plaintiff's failure to submit an affidavit authenticating the document in question generally would preclude its consideration

for purposes of summary judgment, see Orsi v. Kirkwood, 999 F.2d 86, (4th Cir. 1993) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of [former Federal] Rule [of Civil Procedure] 56(e) [now codified at Federal Rule of Civil Procedure 56(c)(4)]." (internal quotation marks omitted));

2) because Plaintiff had a good-faith basis to rely on Defendants' admission (in Paragraph 55 of their Answer) that Plaintiff had a right to payment from Defendant MSI under the Lease (and thus to refrain from supplying any other evidence to meet its obligation to support its factual position on that subject under Federal Rule of Civil Procedure 56(c)(1)), the Court should exercise its discretion to "give [Plaintiff] an opportunity to properly support or address th[is] fact," Fed. R. Civ. P. 56(e)(1), by filing a supplemental affidavit authenticating the document; and

3) it should defer any decision to exclude the document in question from consideration at the summary judgment stage under Federal Rule of Civil Procedure 37(c)(1) (based on Plaintiff's failure to produce it during the discovery period) until Plaintiff has an opportunity to explain such alleged failure and/or to propose alternative sanctions, see Fed. R. Civ. P. 37(c)(1) (providing that exclusion sanction does not apply if "failure [to produce] was substantially justified or is harmless" and that,

"instead of [exclusion] sanction, the court on motion and after giving an opportunity to be heard [may impose other sanctions]").

*Defendants' Affirmative Defenses of Estoppel and Waiver*

In their Answer, Defendants asserted that "Plaintiff's claims are barred by the doctrines of waiver and/or estoppel, based on [P]laintiff's acceptance of rent from or on behalf of [Defendant MSA], when [P]laintiff knew or should reasonably have known that [Defendant MSI] was no longer occupying the [Premises] and/or had been dissolved, and that there had been no assignment of the Lease." (Docket Entry 52 at 9.) In their brief responding to Plaintiff's partial summary judgment motion, Defendants did not pursue the foregoing estoppel/waiver argument (premised on Plaintiff's acceptance of rent from Defendant MSA while knowing that Defendant MSA lacked a valid assignment of Defendant MSI's rights under the Lease); instead, Defendants' summary judgment response brief focused on the alleged existence of a waiver/estoppel defense based on:

1) Plaintiff's failure to "notify [Defendant] MSA that [Plaintiff] disagreed with [Defendant MSA's] position [that Defendant MSA was not bound by the Lease] or that [Plaintiff] contended that [Defendant] MSA was bound to continue paying rent through the remaining term of the [Lease] . . . [while Plaintiff] accepted rent from [Defendant] MSA without objection for over two years," despite Plaintiff's "actual knowledge in August or

September of 2008 that [Defendant] MSA had replaced [Defendant] MSI as the tenant and that [Defendant] MSA took the position that it was not bound to the [Lease]" (Docket Entry 73 at 18);[6] and

2) Plaintiff's decision to utilize a mechanism different from that specified by the Lease for the calculation of payments due from Defendant MSA for taxes, insurance, and common area maintenance in 2008 and 2009, despite Defendant MSA's refusal to execute an amendment to the Lease, "a benefit that [Plaintiff] would only have been entitled to if [Defendant] MSA was a month-to-month tenant, such that [Plaintiff] could dictate changes in rental charges at any time, on a month's notice" (id. at 18-19).

These arguments have no apparent bearing on Defendant MSI's liability to Plaintiff for breach of the Lease. Rather, they represent asserted defenses to Plaintiff's claim for breach of contract against Defendant MSA. Accordingly, even if Defendants can pursue these affirmative defenses despite their substantive variance from the allegations of Defendants' Answer, said defenses would not affect the resolution of summary judgment issues as to Plaintiff's claim that Defendant MSI breached the Lease.

<u>Breach of Contract against Defendant MSA</u>

---

[6] Plaintiff's acceptance of payments from Defendant MSA could not affect the viability of Plaintiff's breach of contract claim against Defendant MSI because, as Defendants recognize elsewhere in their summary judgment filings, under the Lease's terms and North Carolina law, Plaintiff had a duty to mitigate its damages by seeking an alternative tenant. (See Docket Entry 73 at 19.)

As to Plaintiff's breach of contract claim against Defendant MSA, both sides:

1) have moved for summary judgment (Docket Entry 68 at 4; Docket Entry 69 at 2);

2) have agreed that North Carolina law applies to that claim and requires proof of a valid contract and a breach (Docket Entry 68 at 18; Docket Entry 70 at 10-11); and

3) have focused their arguments only on the "valid contract" element of the claim (see Docket Entry 68 at 18-22; Docket Entry 70 at 10-12; Docket Entry 73 at 12-14; Docket Entry 75 at 14-18; Docket Entry 76 at 4-7).

More specifically, the parties' dispute on this claim turns on whether the equitable doctrine of "quasi-estoppel" (sometimes called "estoppel by acceptance of benefits") — as the North Carolina Supreme Court has construed or will construe it — makes Defendant MSA liable under the Lease despite the fact that Defendant MSA never became a signatory to the Lease (or any assignment thereof). (See id.) The North Carolina Supreme Court has recognized the concept of liability by quasi-estoppel and has characterized the theory as one by which "a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 18, 591 S.E.2d 870, 881-82

(2004) (citing <u>Brooks v. Hackney</u>, 329 N.C. 166, 173, 404 S.E.2d 854, 859 (1991)) (emphasis added). Said court further has explained that "'the essential purpose of quasi-estoppel is to prevent a party from <u>benefitting</u> by taking two clearly inconsistent positions.'" <u>Id.</u>, 358 N.C. at 18-19, 591 S.E.2d at 882 (quoting <u>B & F Slosman v. Sonopress, Inc.</u>, 148 N.C. App. 81, 88, 557 S.E.2d 176, 181 (2001)) (internal ellipses omitted) (emphasis added).[7]

In this case, Plaintiff has presented no evidence that Defendant MSA "accept[ed]" the Lease (or an assignment thereof) "and then accept[ed] benefits under [the Lease]," <u>id.</u>, 358 N.C. at 18, 591 N.C. at 882. Nor has Plaintiff produced proof that Defendant MSA previously "benefitt[ed] by taking," <u>id.</u>, a position inconsistent with its current denial of liability under the Lease. Accordingly, under the dictates of the North Carolina Supreme Court, the doctrine of quasi-estoppel does not preclude Defendant MSA from denying liability for the Lease.

In an effort to avoid this conclusion, Plaintiff has listed various items of evidence "establish[ing] that [Defendant] MSA considered itself to be the tenant of the [Premises] under the

_____

[7] The two federal cases cited by Plaintiff regarding quasi-estoppel (<u>see</u> Docket Entry 68 at 19 n.6) also involved defendants who derived a benefit (i.e., favorable tax treatment) by taking one position about a transaction (i.e., payments to an ex-spouse) and later claimed a different understanding of the transaction. To the extent Plaintiff relies on a Georgia intermediate appellate court ruling to suggest that the doctrine of quasi-estoppel can arise when a defendant "manifests an intent to become bound" by a contract, even in the absence of evidence that the defendant thereby benefitted, Plaintiff has failed to identify any authority that the North Carolina Supreme Court would deviate from its prior contrary rulings to adopt that view. (<u>See</u> Docket Entry 68 at 19.)

Lease with corresponding rights (and obligations) as a tenant"
(Docket Entry 68 at 19-20). As Defendants have countered, however,
most of this evidence only shows that Defendant MSA occupied the
Premises and paid rent on a monthly basis in the amount prescribed
by the Lease. (<u>See</u> Docket Entry 73 at 13-14.) This showing does
not suffice because, under North Carolina law, Defendant MSA's
occupancy of the Premises while paying rent did not constitute a
"benefit" derived from the Lease.

Under the Lease (and North Carolina law, <u>see</u> <u>Herring</u>, 249 N.C.
at 225-27, 106 S.E.2d at 200-01), Defendant MSA could not assume
Defendant MSI's position as a tenant under the Lease, except
pursuant to a written assignment; as Plaintiff's First Amended
Complaint makes clear (<u>see</u> Docket Entry 47 at 8), no such
assignment ever occurred. As a result, when Defendant MSA took
possession of the Premises and began making monthly payments which
Plaintiff accepted, Defendant MSA did not become a valid party to
the Lease (or a party to any lease); instead, Defendant MSA
effectively moved in to the Premises pursuant to an invalid
assignment of Defendant MSI's rights under the Lease – an
arrangement to which Plaintiff acquiesced by accepting monthly
rental payments from and on behalf of Defendant MSA. Under North
Carolina law, "when a tenant enters into possession under an
invalid lease and tenders rent which is accepted by the landlord,
a periodic tenancy is created. . . . The period of the tenancy is

determined by the interval between rental payments.  In this case a month-to-month tenancy was created." <u>Kent v. Humphries</u>, 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981).

As long as Plaintiff consented, Defendant MSA thus could occupy the Premises as a function of North Carolina law without relying on any "benefit" of the Lease.  <u>See</u> <u>B & F Slosman</u>, 148 N.C. App. at 88, 557 S.E.2d at 181 ("The fact that defendant occupied the additional space during the negotiation process [between the parties for a long-term lease] and agreed to pay a monthly rent does not result in defendant's taking two inconsistent positions [when it subsequently vacated the building long before the long-term lease the parties had discussed would have expired]." (citing <u>Kent</u>, 303 N.C. at 679, 281 S.E.2d at 46)).[8]  If Plaintiff had sought to expel Defendant MSA from the Premises at the end of one of the monthly intervals of the periodic tenancy and Defendant MSA then had refused to vacate the Premises based on a claim of right under the Lease, Plaintiff properly could assert that Defendant MSA derived a benefit from the Lease (i.e., the benefit of remaining as a tenant without Plaintiff's consent while Plaintiff pursued Defendant MSA's eviction).  The record, however, reflects no such circumstances in this case.

---

[8] As previously noted, the North Carolina Supreme Court specifically has cited with approval the exposition of the quasi-estoppel doctrine in <u>B & F Slosman</u>.  <u>See</u> <u>Whitacre P'ship</u>, 358 N.C. at 18-19, 591 S.E.2d at 882.

-24-

Nor do statements or actions by Defendant MSA, Defendant Inuvo, and/or officials of said entities reflecting a mistaken belief (or concern) that the Lease bound Defendant MSA support an inference that Defendant MSA benefitted from the Lease. Simply put, viewing the Lease as binding is not the same as deriving a benefit from having taken that view.[9] In North Carolina, the quasi-estoppel doctrine demands proof of the latter. See Whitacre P'ship, 358 N.C. at 18-19, 591 S.E.2d at 881-82.

In sum, Plaintiff may have shown that Defendant MSA has taken inconsistent positions as to whether it was bound by the Lease, but Plaintiff has not provided an evidentiary basis for a reasonable fact-finder to conclude that Defendant MSA ever benefitted by treating the Lease as an obligation. Accordingly, because the North Carolina Supreme Court has limited the doctrine of quasi-estoppel to situations in which a defendant secured a benefit from

---

[9] Plaintiff's final brief on this subject emphasized that: 1) Defendant MSA made improvements to the Premises; 2) Defendant Inuvo identified the Lease as a corporate obligation in filings with the Securities and Exchange Commission ("SEC"); and 3) Defendant Inuvo recently sold Defendant MSA in a manner that took into account potential liability for the Lease. (See Docket Entry 76 at 5-7.) In making this argument, however, Plaintiff failed to offer any evidence that, in any of the foregoing scenarios, Defendant MSA benefitted by taking the position that the Lease was (or, more accurately, might be adjudged) its obligation. (See id.) For example, Plaintiff did not come forward with proof that: 1) Defendant MSA obtained more favorable tax treatment for improvements it made by claiming the Lease as a long-term liability; 2) Defendant Inuvo's balance sheet looked better to potential investors because the Lease appeared on its SEC filings; or 3) treating the Lease as a potential liability made Defendant MSA more valuable upon its sale.

a contract it subsequently disavowed, Plaintiff cannot prevail on its breach of contract claim against Defendant MSA.[10]

<u>Fraud and UDTPA Claims against Defendants MSI and MSA</u>

Defendants have moved for summary judgment on Plaintiff's fraud and UDTPA claims against Defendants MSI and MSA. (Docket Entry 69 at 2.) The Court should grant those aspects of Defendants' summary judgment motion because Plaintiff has not produced evidence that it relied on any alleged false statements by Defendants MSI and MSA in a manner that damaged Plaintiff.

"To prove fraud under North Carolina law, the plaintiff must establish that the defendant (1) made a false representation of material fact, (2) knew it was false (or made it with reckless disregard of its truth or falsity), and (3) intended that the plaintiff rely upon it. In addition, (4) <u>the plaintiff must be injured by reasonably relying on the false representation</u>." <u>Food Lion, Inc. v. Capital Cities/ABC, Inc.</u>, 194 F.3d 505, 512 (4th Cir. 1999) (emphasis added); <u>accord</u> <u>Ragsdale v. Kennedy</u>, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). "[A UDTPA] claim under [North Carolina law] requires proof of three elements: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2)

---

[10] Alternatively, Plaintiff contends that, by signing the Estoppel Certificate in February 2007, Defendant MSA's Vice President executed a writing sufficient to establish the existence of a valid contract between Plaintiff and Defendant MSA as to the Lease. (<u>See</u> Docket Entry 75 at 15.) The plain language of the Estoppel Certificate forecloses this position; specifically, said document does not memorialize any agreement by Defendant MSA to become bound to the Lease, but instead confirms the Lease's status as a binding obligation of Defendant MSI to the exclusion of all others. (<u>See</u> Docket Entry 68-2 at 64-65.)

in or affecting commerce, (3) <u>proximately causing actual injury to</u> <u>plaintiff or plaintiff's business</u>." <u>AG Sys., Inc. v. United</u> <u>Decorative Plastics Corp.</u>, 55 F.3d 970, 974 (4th Cir. 1995) (internal brackets and quotation marks omitted) (emphasis added); <u>accord</u> <u>Dalton v. Camp</u>, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "The third element of a claim under [North Carolina's UDTPA] statute 'is similar to the detrimental reliance requirement under a fraud claim.'" <u>Wysong and Miles Co. v. Employers of</u> <u>Wausau</u>, 4 F. Supp. 2d 421, 433 (M.D.N.C. 1998) (Tilley, J.) (quoting <u>Pearce v. American Defender Life Ins. Co.</u>, 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986)); <u>accord</u> <u>Westchester Fire Ins. Co.</u> <u>v. Johnson</u>, 221 F. Supp. 2d 637, 649 (M.D.N.C. 2002) (Beaty, J.).[11]

Plaintiff contends that the "[Estoppel] Certificate delivered to [it in February 2007 (Docket Entry 68-2 at 64-65)] easily satisfies the elements of the UDTPA claim" (Docket Entry 75 at 19) and that "the same facts that support the UDTPA claim demonstrate that [Defendants MSI and MSA] defrauded [Plaintiff]" (<u>id.</u> at 21). Assuming (as Plaintiff asserts) that "statements in the [Estoppel] Certificate were, in fact, false" (<u>id.</u> at 19), Plaintiff's fraud

---

[11] Another line of authority from the North Carolina Court of Appeals similarly makes clear that where, as here, "an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." <u>Tucker v. Boulevard at Piper Glen LLC</u>, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002) (citing <u>Pleasant Valley Promenade v. Lechmere,</u> <u>Inc.</u>, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995), which in turn relied on <u>Ellis v. Smith-Broadhurst, Inc.</u>, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980), which derived the principle from <u>Mayton v. Hiatt's Used Cars, Inc.</u>, 45 N.C. App. 206, 212, 262 S.E.2d 860, 864 (1980)).

and UDTPA claims fall short as a matter of law because Plaintiff has failed to offer any evidence that it suffered damages as a proximate result of reliance it placed on any false statements in the Estoppel Certificate, as required by North Carolina law, see AG Sys., 55 F.3d at 974; Wysong and Miles, 4 F. Supp. 2d at 433 (quoting Pearce, 316 N.C. at 471, 343 S.E.2d at 180).

According to Plaintiff, the Estoppel Certificate included the following false statements:

1) "[Defendant] MSI 'occupies' the [P]remises" (Docket Entry 75 at 19);

2) "[Defendant] MSI was solvent" (id.);

3) "only [Defendant] MSI occupied the [P]remises" (id.); and

4) "[t]here are no uncured defaults on the part of [Defendant MSI] under the Lease, and to [Defendant MSI's] actual knowledge, no event has occurred and no condition exists which, with the giving of notice or lapse of time, or both, will constitute a default under the Lease" (id. (internal ellipses omitted)).[12]

In Plaintiff's view, by uttering the foregoing falsehoods, Defendants MSI and MSA "lulled [Plaintiff] into believing that [Defendant] MSI was an ongoing concern that would continue to occupy the [P]remises and pay rent in accordance with the terms of

---

[12] Plaintiff explained that this final statement qualified as false because "the Lease specifically identified 'dissolution' as a default event [and] . . . [Defendant] Inuvo adopted a resolution in January 2007 to dissolve [Defendant] MSI . . . [such that Defendant MSI] was thus in default of the Lease at the time the [Estoppel] Certificate was signed." (Docket Entry 75 at 19.)

the Lease, when, in fact, [Defendant] MSI did not even exist anymore." (Id. at 20.) Plaintiff, however, has not come forward with any evidence that it actually scrutinized the Estoppel Certificate in a fashion that resulted in such "lulling"; instead, Plaintiff merely has asserted – without reference to an affidavit or any other evidentiary material – that, had Defendants' counsel asked one of Plaintiff's officials in a deposition "whether the [Estoppel] Certificate was a matter of importance to [Plaintiff] . . . [Defendants'] counsel would have learned that it was." (Id. at 22.) This showing fails as a matter of law for several reasons.

First, as the party with the burden of proof on the instant fraud and UDTPA claims, Plaintiff cannot rely on Defendants' alleged failure to ask questions about such issues in a deposition or on a proffer by Plaintiff's counsel about the answer a witness would have given; instead, Plaintiff must identify competent evidence that would support a finding in its favor on each element of these causes of action. See Fed. R. Civ. P. 56(c)(1). Second, for purposes of assessing the reliance/proximate cause element of Plaintiff's fraud and UDTPA claims, the issue is not whether the Estoppel Certificate "was a matter of importance" to Plaintiff, but rather whether Plaintiff actually relied on alleged false statements in the Estoppel Certificate in a manner that proximately caused damages. Third, the record reveals that Plaintiff placed "importance" on the Estoppel Certificate only to the extent that

its collection helped Plaintiff satisfy a lender's conditions for financing the Perimeter Park Property purchase; more specifically, Plaintiff's financier "required [Plaintiff] to obtain [estoppel certificates] from tenants representing 80 percent of the leased space [within the] Perimeter Park [Property]." (Id.; see also Docket Entry 70-7 at 8-11 (deposition testimony from Plaintiff's official who collected estoppel certificates).)

In other words, no cited record material would allow a reasonable fact-finder to conclude that Plaintiff took note of the contents of the Estoppel Certificate at issue in this case. (See Docket Entry 75 at 22.) Without proof that it considered the substance of the representations in the Estoppel Certificate, Plaintiff cannot show reliance (or damages due to such reliance). See generally Driggers v. Sofamor, S.N.C., 44 F. Supp. 2d 760, 764 n.1 (M.D.N.C. 1998) (ruling that plaintiff claiming fraud under North Carolina law "failed to show reliance" where alleged false statements could not have affected plaintiff's decision-making).

Nor has Plaintiff identified evidence that it would have refrained from purchasing the Perimeter Park Property at the established price or taken any other action (such as evicting Defendant MSI or Defendant MSA) had the Estoppel Certificate contained truthful information about Defendant MSI's lack of solvency and planned dissolution or about Defendant MSA's presence on the Premises without a valid assignment. (See id.) Moreover,

although the record reflects that Plaintiff failed to obtain estoppel certificates from a number of tenants (see Docket Entry 70-7 at 12), Plaintiff made no showing that it took steps to deal with those tenants from whom it lacked any assurances of solvency and proper occupancy. (See Docket Entry 75 at 22.) This fact undermines Plaintiff's unsupported, conclusory assertion that it was "induced to refrain from taking actions that might have protected its rights, such as requesting a guaranty [from Defendants MSA and Inuvo]." (Id.; see also id. at 20 (asserting without record citation that "[h]ad [Plaintiff] known the true facts about [Defendant] MSI, [Plaintiff] could have sought to obtain a guaranty from [Defendant] MSA or [Defendant] Inuvo or taken other action to protect its interests in the [Premises,] . . . [but that the false representations in the Estoppel Certificate] deprived [Plaintiff] of that opportunity, contributing to the monetary losses [it] has incurred").)[13]    Finally, as Defendants have noted, "[e]ven if it could be presumed, without any evidence, that [Plaintiff] would have requested a guaranty or other security, there is no evidence that [Defendant] MSA or [Defendant] Inuvo would have given one." (Docket Entry 77 at 7.)

_____

[13] To the extent Plaintiff seeks to characterize "monetary losses" stemming from the failure of Defendants MSI and MSA to make monthly rent payments after August 2009 as damages related to the instant fraud and UDTPA claims, Plaintiff still fails on the reliance/proximate cause element. Simply put, Plaintiff has not pointed to any evidence that reliance it placed on statements made in the Estoppel Certificate in February 2007 proximately caused its non-receipt of rent two and a half years later. (See Docket Entry 75 at 18-22.)

Plaintiff's arguments in this regard thus represent mere speculation, which – as this Court (per United States District Judge N. Carlton Tilley, Jr.) has recognized – North Carolina law does not treat as sufficient to meet the proximate cause standard:

> "The principle which will not allow the recovery of damages when their existence rests solely on <u>speculation</u> applies both to the fact of damages and to their cause. Thus, <u>a plaintiff cannot recover damages by proving only that the defendant has unlawfully violated some duty owing to the plaintiff, leaving the trier of fact to speculate as to the damages</u>; he must go further and prove the nature and extent of the damage suffered by the plaintiff and that the breach of duty was the legal cause of that damage.  Leaving either of these damage questions to <u>speculation</u> on the part of the trier of fact will prevent recovery."

<u>Food Lion, Inc. v. Capital Cities/ABC, Inc.</u>, 964 F. Supp. 956, 960 (M.D.N.C. 1997) (quoting <u>People's Center, Inc. v. Anderson</u>, 32 N.C. App. 746, 748, 233 S.E.2d 694, 696 (1977)) (emphasis added), <u>aff'd in relevant part</u>, 194 F.3d at 512-14; <u>accord</u> <u>Maharias v. Weathers Brothers Moving & Storage Co.</u>, 257 N.C. 767, 768, 127 S.E.2d 548, 549 (1962) ("The evidence raises a mere conjecture, surmise and speculation as to the cause of the fire.  A cause of action must be based on something more than a guess.").

Under these circumstances, the Court should enter summary judgment for Defendants MSI and MSA on Plaintiff's fraud and UDTPA claims.

<u>Corporate Veil-Piercing Claim</u>

The First Amended Complaint alleges that Defendant Inuvo "was in complete control over both [Defendants MSI and MSA] to the

extent that [they] were mere instrumentalities of [Defendant Inuvo]." (Docket Entry 47 at 1-2.) Plaintiff therefore has asked the Court to pierce "the corporate veils of [Defendants MSI and MSA] . . . to reach [Defendant Inuvo] in order to remedy the fraud and inequitable conduct committed with respect to [Plaintiff]." (Id. at 16.) Both sides have moved for summary judgment on this claim. (Docket Entry 68 at 4-5; Docket Entry 69 at 2.)

"In North Carolina . . . the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.'" Glenn v. Wagner, 313 N.C. 450, 454 (1985).[14] "[T]he instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form . . . ." Id., 313 N.C. at 458, 329 S.E.2d at 332.

Prior to its decision in Glenn, the North Carolina Supreme Court had

> enumerated three elements which support an attack on
> separate corporate entity under the instrumentality rule:

---

[14] The parties agree that North Carolina law (particularly as established by the North Carolina Supreme Court in Glenn) controls the assessment of Plaintiff's veil-piercing claim. (See Docket Entry 68 at 22-23; Docket Entry 70 at 15-17; Docket Entry 73 at 14-15; Docket Entry 75 at 22-24.) That agreement coheres with a prior ruling from this Court (per United States Magistrate Judge Russell A. Eliason) that, "if the North Carolina Supreme Court were faced with a choice of law question for piercing the corporate veil, it would adopt the internal affairs doctrine and apply the law of the state of incorporation." Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 349 (M.D.N.C. 1995). In this case, as in Dassault Falcon Jet, the corporations whose veils Plaintiff seeks to pierce (i.e., Defendants MSI and MSA) were "incorporated in North Carolina [and], therefore, North Carolina law will apply to [the instant] attempt to pierce [the] corporate veil," id.

-33-

(1) Control, <u>not mere majority or complete stock control</u>, but <u>complete domination, not only of finances, but of policy and business practice</u> in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or <u>wrong</u>, to perpetrate the violation of a statutory or other <u>positive legal duty</u>, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must <u>proximately cause</u> the injury or unjust loss complained of.

<u>Id.</u>, 313 N.C. at 454-55, 329 S.E.2d at 330 (quoting <u>B-W Acceptance Corp. v. Spencer</u>, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)) (emphasis added).

The <u>Glenn</u> Court held that in applying these elements courts could look not only to "[f]actors" cited in its prior decisions, i.e., "[i]nadequate capitalization ('thin incorporation')[,] [n]on-compliance with corporate formalities[,] [c]omplete domination and control of the corporation so that it has no independent identity[, and] [e]xcessive fragmentation of a single enterprise into separate corporations," <u>id.</u>, 313 N.C. at 455, 329 S.E.2d at 330-31 (internal citations and numbering omitted), but also "non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, non-functioning of other officers or directors, [and] absence of corporate records," <u>id.</u>, 313 N.C. at 458, 329 S.E.2d at 332. The opinion further explained that "[i]t

-34-

is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had no separate mind, will or existence of its own and was therefore the mere instrumentality or tool of the dominant corporation." Id. (internal quotation marks omitted). Finally, the Glenn Court clarified "that domination sufficient to pierce the corporate veil need not be limited to the particular transaction attacked . . . [but] that it will be a rare case in which the corporate veil will be pierced when the domination does not extend to the transaction attacked." Id., 313 N.C. at 456, 329 S.E.2d at 331.[15]

In support of its veil-piercing claim, Plaintiff has identified evidence that Defendant Inuvo:

1) folded Defendant MSI's business operations into Defendant MSA (Docket Entry 68 at 24 (citing Docket Entry 68-11 at 3));

2) transferred Defendant MSI's assets to Defendant MSA and other entities owned by Defendant Inuvo without consideration (id. at 24-25 (citing Docket Entry 68-8 at 8-9, Docket Entry 68-13 at 1-3, and Docket Entry 68-22 at 3-6));

---

[15] Accordingly, under North Carolina law, even absent proof that Corporation A "formulated or had actual knowledge of the policy underlying the transaction attacked" by a plaintiff, a court can pierce the corporate veil where the evidence "support[s] a finding that [Corporation B that committed the fraud or wrong] had 'no separate role of its own' and that [Corporation A] exercised 'actual control' over [Corporation B], 'operating the latter as a mere instrumentality or tool.'" Glenn, 313 N.C. at 457, 329 S.E.2d at 332.

3) disposed of hundreds of thousands of dollars from Defendant MSI's bank accounts following its dissolution without leaving reserves to cover Defendant MSI's surviving obligations (such as the Lease) (id. at 27 (citing Docket Entry 68-8 at 11, Docket Entry 68-28 at 3-21, Docket Entry 68-31 at 1-6));

4) overrode the business judgment of Defendant MSA's officials to move Defendant MSA into the Premises (for which Defendant MSI held the Lease) (id. at 26 (citing Docket Entry 68-24 at 5-6)); and

5) failed to maintain proper corporate records for Defendants MSI and MSA (id. (citing Docket Entry 68-27 at 3-4)).

In light of the factors recognized in Glenn, such evidence would permit (but would not compel)[16] a reasonable fact-finder to rule for Plaintiff on its veil-piercing claim. Plaintiff's evidentiary forecast extends beyond reliance on the mere fact of Defendant Inuvo's complete ownership of Defendants MSI and MSA. Moreover, the cited evidence supports an inference that Defendant Inuvo disregarded corporate formalities and exercised complete control over Defendant MSI's operations and finances in a manner proximately connected to the breach of the Lease, a "wrong" subject

---

[16] Defendants did not contest the evidence cited by Plaintiff in its summary judgment brief, but instead relied on the fact that its expert on corporate business practices opined that Defendant Inuvo exercised routine control, rather than excessive dominance over Defendants MSI and MSA. (See Docket Entry 70 at 17-18.)  However, Defendants failed to present any authority that the mere identification of such expert testimony entitles a litigant to judgment as a matter of law on a veil-piercing claim. (See id.)  Nor has the undersigned Magistrate Judge uncovered case law to that effect.  Under these circumstances, the Court should conclude that Defendants' expert opinion evidence suffices to forestall entry of judgment as a matter of law for Plaintiff on this issue and should allow the fact-finder to determine the veil-piercing claim.

to remedy under North Carolina law via veil-piercing, <u>see</u> <u>McLeskey</u> <u>v. Davis Boat Works, Inc.</u>, No. 99-1113, 225 F.3d 654 (decision without opinion), 2000 WL 1008793, at *4 (4th Cir. July 21, 2000) (unpublished) (ruling that plaintiff's "allegations that [owners of corporate defendants] frustrated his <u>contract rights</u> by redistributing profits of [corporate defendant for whom he worked] among the various corporate defendants" could support veil-piercing claim under North Carolina law (emphasis added)); <u>Dassault Falcon</u> <u>Jet Corp. v. Oberflex, Inc.</u>, 909 F. Supp. 345, 350 (M.D.N.C. 1995) ("The wrong or injustice for which the [veil-piercing] remedy may be invoked need not include fraud. . . . The North Carolina courts have identified a number of acts which serve as a qualifying wrong or injustice when combined with excessive domination and control. They [include]: (1) operating the subsidiary so it had no assets to pay future debts; [and] (2) unilaterally voiding contracts of the controlled corporation to the detriment of creditors[.]" (citing <u>Glenn</u> and <u>State ex rel. Util. Comm'n v. Nantahala Power &</u> <u>Light Co.</u>, 313 N.C. 614, 332 S.E.2d 397 (1985))); <u>East Market St.</u> <u>Square, Inc. v. Tycorp Pizza IV, Inc.</u>, 175 N.C. App. 628, 638, 625 S.E.2d 191, 199 (2006) ("[W]e consider performance under a contract to be a 'positive legal duty,' the violation of which constitutes a clear 'wrong' done to plaintiffs." (quoting <u>Glenn</u>, 313 N.C. at 455, 329 S.E.2d at 330)).

<u>CONCLUSION</u>

The record establishes Plaintiff's entitlement to judgment as a matter of law against Defendant MSI for breach of the Lease, regardless of whether the Court permits Defendants to amend their Answer. Conversely, Plaintiff has failed to come forward with sufficient evidence to permit a reasonable fact-finder to return a verdict in its favor on its breach of contract claim against Defendant MSA or its UDTPA and fraud claims against Defendants MSI and MSA. Finally, material factual disputes preclude summary judgment for either side on Plaintiff's request to pierce Defendant MSI's corporate veil (such that its corporate parent, Defendant Inuvo, would become liable for Defendant MSI's breach of contract).

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(a) as to the First, Second, and Fifth Causes of Action of Plaintiff's First Amended Complaint (Docket Entry 68) be **GRANTED IN PART AND DENIED IN PART** in that the Court should enter judgment as a matter of law for Plaintiff on its First Cause of Action, its breach of contract claim against Defendant MSI, but otherwise should deny Plaintiff's partial summary judgment motion.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 69) be **GRANTED IN PART AND DENIED IN PART**, in that the Court should enter judgment as a matter of law for Defendants on Plaintiff's breach of contract claim against Defendant MSA and Plaintiff's UDTPA and fraud claims against

Defendants MSI and MSA, but otherwise should deny Defendants'
summary judgment motion.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Leave to
File Amended Answers to First Amended Complaint (Docket Entry 78)
be **DENIED**.

          /s/ L. Patrick Auld
          **L. Patrick Auld**
   **United States Magistrate Judge**
March 7, 2011